Joyce WYERICK, Plaintiff-Appellant,

v.

BAYOU STEEL CORPORATION, Defendant-Appellee.

No. 89-3198
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 9, 1989.
Rehearing Denied Dec. 7, 1989.

Sheila C. Myers, New Orleans, La., for plaintiff-appellant.

Ernest R. Malone, Jr., Sidney F. Lewis, Kullman, Inman, Bee & Downing, New Orleans, for defendant-appellee.

Before REAVLEY, KING and JOHNSON, Circuit Judges.

KING, Circuit Judge:

Plaintiff, a female employee of defendant, brought a sexual harassment action under Louisiana Revised Statute § 23:1006. The district court granted summary judgment for the defendant employer. Plaintiff appeals and we reverse.

I.

Plaintiff-appellant, Joyce Wyerick (Wyerick), was a crane operator with defendant-appellee, Bayou Steel Corporation (Bayou Steel), for seven years prior to this action. While working the night shift on June 28, 1987, she experienced chest pain and difficulty breathing. She went to the first aid station where the emergency medical technician (EMT) evaluated her, administered oxygen, and performed an electrocardiogram (EKG). Wyerick was required to remove her shirt for the EKG.[1] She remained in the first aid station for several hours and eventually went home. Her own physician later diagnosed her as having suffered an anxiety attack.

On July 16, 1987, Wyerick complained about the quality of emergency medical care she received in a meeting with fellow employees and supervisors. Following this meeting, she became the target of numerous sexual remarks concerning the EKG and the physical examination she had undergone. The remarks were made by fellow male employees and supervisors, and were made in person as well as on the company communication radio. The sexual comments began in late July of 1987 and continued even after Wyerick filed suit. She stated that "a lot" of sexual remarks were made and that they occurred "off and on"—at their worst, two to three times a day. Wyerick elaborated upon several such occurrences.[2]

As part of a grievance procedure in January of 1988 concerning the adequacy of the emergency medical care at Bayou Steel, Wyerick made the first of four reports on the sexual comments to management. Bayou Steel acknowledged in writing that it was aware that harassing comments had been made to Wyerick and that immediate action should be taken by the company to stop them. Bayou Steel monitored the radio for sexually harassing comments and asked Wyerick to report any sexual remarks made to her by male employees. However, there is no evidence in the sum-

---

1. During Wyerick's examination, the male EMT made a sexual reference to her breasts saying, "I had better get a good look at them now because that will be the closest I will ever get." Wyerick did not inform management of this comment.

2. One male employee said he was going to become a gynecologist so that he could massage Wyerick's breasts, while another said he could not breathe and made massaging gestures. One supervisor stated that the EMT was watching her and had gotten a "hard-on" while performing the EKG. There were references to "mouth-to-mouth" resuscitation on a "couple of different occasions" as well as co-ed "showers" at physical examinations. Wyerick was also called a "fucking bitch" twice on a company radio.

mary judgment record that the employees who made remarks were contacted by Bayou Steel or that Bayou Steel took any affirmative steps to remedy the situation.

In April of 1988, Wyerick reported to her supervisor that the comments still persisted but were "starting to die down," and the supervisor advised her to let him know if she had "any problems."[3] The comments, however, did not stop—they continued on the radio and in person. Wyerick herself discussed this behavior with two fellow employees who apologized when they realized that she was upset and stopped making remarks. Wyerick did not go back to her supervisor or continuously inform management of the radio comments because she felt they should have been aware of them since the radio was monitored at all times by supervisory personnel.

The radio transmitters at Bayou Steel were frequently used by employees for work and social discussions. Often work terminology had sexual connotations such as "stick it in" or "how deep is it." Moreover, employees often joked with each other and sexual nuances sometimes came into play. Wyerick contends that "nine times out of ten," she did not make any reply to "sexual" or "dirty" jokes and that, if she did reply, her retorts were not sexual. However, as is apparent from her deposition, she did make some, albeit few, arguably sexual replies.[4] Wyerick's complaint is very specific. She does not complain about the general sexual discussion unrelated to her EKG for an anxiety attack. Rather, the gravamen of her lawsuit is the particularized comments, jokes and gestures related to the EKG and other physical examinations.

Bayou Steel moved for summary judgment. The court granted summary judgment from the bench stating:

Anyhow, the whole deposition there shows that this was—

The so-called jokes or comments over the radio was [sic] not directed just to females, it was just an overall situation that existed out there.

And according to the papers that I have, I don't find any genuine issue of material fact on the issue of sexual harassment inasmuch as any harassment—any harassment out there was directed to both the males and females, and the plaintiff participated in it and admitted that she used similar types of language to these men.

So, the Court is going to grant the motion for summary judgment.

It is from this ruling that Wyerick appeals.

## II.

This is a summary judgment case. As such, we must consider all fact questions with deference to the nonmovant. *Reid v. State Farm Mut. Auto. Ins.*, 784 F.2d 577, 578 (5th Cir.1986). In other words, we must "review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party." *Baton Rouge Bldg. Constr. v. Jacobs Constructors*, 804 F.2d 879, 881 (5th Cir.1986) (per curiam).[5] When assessing the propriety of the district court's grant of summary judgment, we employ the same standard as the district court. *Reid*, 784 F.2d at 578. Under this standard, "[t]he judge's function is not himself to weigh the evidence and determine the truth of the matter...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Rather, we must "[r]eview the

---

3. Wyerick also approached her foreman about her difficulties. In addition, Wyerick's union asked for a "civil rights meeting" in March of 1988 regarding sexual harassment. However, Bayou Steel "refused the meeting," despite two efforts by the union to organize a meeting.

4. On one occasion, after three months of jokes about her weight and appearance from a particular individual, she replied: "Well, you've never had a good woman. You wouldn't know what a

good woman would be." In another case, after being called a "bitch" she replied that that person was a "mother fucker." Finally, she called someone a "whoremonger" [sic] in response to a statement made to her on the radio.

5. Of course, questions of law are addressed by de novo review. *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1364 (5th Cir.1987).

facts drawing all inferences favorable to the party opposing the motion," and, from that perspective, determine whether "there is no genuine issue as to any material fact" such that the movant is "entitled to judgment as a matter of law." *Reid,* 784 F.2d at 578; Fed.R.Civ.P. 56(c).

### III.

 This action was brought pursuant to Louisiana Revised Statute § 23:1006 [6] rather than its federal counterpart, Title VII. However, the Louisiana courts have determined that their state's statute is "similar in scope" to Title VII and they have "look[ed] to the federal statute in determining whether [a] plaintiff has asserted a cause of action for sexual discrimination" under the Louisiana provision. *Bennett v. Corroon & Black Corp.,* 517 So.2d 1245 (La.Ct.App.1987), *cert. denied,* 520 So.2d 425 (1988); *Dawson v. New Orleans Clerks & Checkers Union,* 483 So.2d 249 (La.Ct. App.1986). In applying Louisiana law, the parties agree that *Jones v. Flagship Int'l.,* 793 F.2d 714, 719–20 (5th Cir.), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987), sets out the essential elements for a hostile environment claim:

(1) *The employee belongs to a protected group, i.e.,* a simple stipulation that the employee is a man or a woman;

(2) *The employee was subject to unwelcome sexual harassment, i.e.,* sexual advances, request for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited

and is undesirable or offensive to the employee;

(3) *The harassment complained of was based on sex, i.e.,* that but for the fact of her sex, the plaintiff would not have been the object of harassment;

(4) *The harassment complained of affected a "term, condition or privilege of employment," i.e.,* the sexual harassment must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment;

(5) *Respondeat superior, i.e.,* that the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

The district court granted summary judgment because it found no disputed issues of material fact on the second and third elements.[7] Specifically, the district court granted summary judgment alternatively based upon its determination that (1) no dispute existed that the contested conduct "prove[d] equally offensive to men and women" and (2) Wyerick's infrequent replies in kind to sexual remarks barred her claim as a matter of law. The court may have also concluded that the environment at Bayou Steel was so heavily charged with sexual overtones as to preclude Wyerick's claim. We consider these in turn.

### IV.

 One basis for Bayou Steel's summary judgment rests upon language in some Louisiana cases that no hostile environment claim exists where the "complained of

---

**6.** Louisiana Revised Statute § 23:1006 provides, in pertinent part:

B. It shall be unlawful discrimination in employment for an employer to:

(1) Intentionally fail or refuse to hire, refer, discharge, or to otherwise intentionally discriminate against or in favor of an individual with respect to compensation, terms, conditions, or privileges of employment, because of race, color, religion, sex, or national origin; or

(2) Intentionally limit, segregate, or classify an employee in a way which would deprive an individual of employment opportunities, give a favor or advantage to one individual over another, or otherwise adversely or favor-

ably affect the status of an employee because of race, color, religion, sex, or national origin. Provided, however, that nothing contained herein shall be construed so as to create a cause of action against any employer for employment practices pursuant to any affirmative action plan.

**7.** Bayou Steel contends that the second, third, fourth and fifth elements are absent. However, it is clear from the district courts oral ruling that it did not base summary judgment upon the absence of a dispute on the fourth and fifth elements. Moreover, the record reflects a dispute regarding the fourth and fifth elements.

sexual conduct ... prove[d] equally offensive to male and female workers...."[8] *Corroon & Black Corp.*, 517 So.2d at 1247. Here, the complained of sexual conduct was not the general banter around the workplace that often took a sexual tone. Rather, the complained of conduct consisted of highly personalized lewd statements and gestures regarding Wyerick's breasts and her physical examination, made after her anxiety attack. By its very nature, this conduct could not be said to be equally offensive to men and women. Thus, the district court's reliance on equal offensiveness as an alternative basis for summary judgment was error.

■ In the alternative, the district court held that summary judgment for Bayou Steel was proper because Wyerick engaged in infrequent replies, arguably in kind, to sexual remarks unrelated to her physical examinations.[9] *See supra* note 4. As the Court stated in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 68, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986), the "gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" A plaintiff's words or acts may, in some circumstances, suggest that sexual comments are welcome, but "the question whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact...." *Id.*

Based upon the record before us, the plaintiff in the instant case made, at most, three sexual comments. These comments were limited replies to an onslaught of sexual remarks and gestures. The intensely factual inquiry anticipated by the Court in *Meritor* requires the issue of unwelcomeness to go to the trier of fact in this case. *See, e.g., Swentek v. USAIR*, 830 F.2d 552, 557 (4th Cir.1987). Thus, the district court erred in granting summary judgment on the basis of Wyerick's replies to sexual remarks.

■ If the district court held that Wyerick was barred as a matter of law from maintaining a claim for a hostile environment because her work atmosphere, as a whole, was heavily charged with sexual comments and gestures,[10] this was error. Work environments "heavily charged" or "heavily polluted" with racial or sexual abuse are at the core of the hostile environment theory. *See Meritor*, 477 U.S. at 66, 106 S.Ct. at 2405 (*citing Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir.1971), *cert. denied*, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972)).[11]

## V.

Having found that disputed issues of material fact exist on the essential elements of Wyerick's hostile environment claim, we REVERSE the district court's grant of summary judgment to Bayou Steel and RE-

---

**8.** This basis for the district court's grant of summary judgment goes to the third element under *Flagship*—whether the harassment complained of was based upon sex.

We need not decide here whether Louisiana Revised Statute § 23:1006 walks in step or parts company with Title VII on this point. *See Bennett v. Corroon & Black Corp.*, 845 F.2d 104, 106 (5th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1140, 103 L.Ed.2d 201 (1989); *Waltman v. International Paper Co.*, 875 F.2d 468, 477 n. 3 (5th Cir.1989). Under either body of law, disputed issues of material fact are present.

**9.** This basis for summary judgment goes to the second element under *Flagship*—whether the employee was subject to unwelcome sexual harassment.

**10.** Bayou Steel does not even argue that this is a proper basis for affirmance.

**11.** If the district court purported to hold that entering into such an atmosphere "welcomed" abuse, that position was rejected by the Court in *Meritor*. *Id.* at 67, 106 S.Ct. at 2405–2406 (rejecting a hypothetical "requirement that a man or woman run the gauntlet of sexual abuse in return for the privilege of being allowed to work") (*citing Henson v. Dundee*, 682 F.2d 897, 902 (11th Cir.1982)). Moreover, such a rule would serve as a reward for incompetence. Managerial personnel in working environments heavily charged with sexual or racial slurs and abuse would actually be deterred from taking remedial action because such action would eliminate their "heavy pollution" defense.

MAND for further proceedings consistent with this opinion.

REVERSED and REMANDED.