United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 24, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-50298
Summary Calendar

_____

NORMA MARQUEZ,

Plaintiff - Appellant,

versus

VOICESTREAM WIRELESS CORPORATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. EP-02-CV-551-DB

_____

Before JOLLY, HIGGINBOTHAM, and PICKERING, Circuit Judges.

PER CURIAM:[1]

I

Norma Marquez filed suit against her former employer, Voicestream Wireless Corporation (Voicestream), arising out of its termination of her employment. Marquez asserted a claim of quid pro quo sexual harassment and a claim of retaliation, all under the Texas Commission on Human Rights Act[2], Texas Labor Code § 21.051.[3]

_____

[1] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[2] The TCHRA provides for the enforcement of the policies of Title VII of the Civil Rights Act of 1964, so "analogous federal statutes and the cases interpreting them" inform the interpretation of the Texas statute. Quantum Chem. Corp. v. Toennies, 47 S.W. 3d

Marquez first claims that she was fired because she refused the invitations of her supervisor, Robert Thomas, to have drinks after work and, secondly, she claims her discharge was also retaliation for reporting these invitations to Rachel Brock, an office manager for Voicestream.

In its motion for summary judgment, Voicestream contended that Marquez failed even to establish a prima facie case of sexual harassment and retaliation. Additionally, it submitted evidence that Marquez was fired because she failed to meet the minimum requirements outlined in Voicestream's Retail Sales Management Minimum Expectations Policy ("RSMMEP").

With respect to the sexual harassment claim, the district court granted the motion for summary judgment because Marquez

473, 476 (Tex. 2001).

[3]     An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

Tex. Lab. Code Ann. § 21.051 (Vernon 1996).

2

failed to present evidence of unwelcome sexual harassment, one of the five elements of a prima facie case for quid pro quo sexual harassment. It also held that even if Marquez had been successful in making a prima facie case for sexual harassment, she failed to rebut Voicestream's proffered, nondiscriminatory motive for terminating her employment.

The district court also granted summary judgment on Marquez's retaliation claim after finding that Marquez did not make a prima facie case for retaliation because she failed to produce evidence that would support a good faith, objectively reasonable belief that she had been subjected to unlawful activity. Moreover, the district court found that she failed to establish a causal connection between her alleged protected activity (her phone conversations with Brock reporting her contact with Thomas) and the termination of her employment because she did not show that the ultimate decision-makers involved in her firing were aware of those conversations. Thus, the district court dismissed the complaint in its entirety.

II

On appeal, Marquez argues that she made a prima facie case for sexual harassment and retaliation. Furthermore, she contends that she successfully rebutted Voicestream's nondiscriminatory reason for terminating her employment.

Marquez contends that she presented evidence showing that she was subjected to "unwelcome sexual harassment." She argues that Thomas's two invitations to have drinks with him were sexual in nature, and that they constituted the requisite unwelcome sexual conduct.[4]

We have defined "unwelcome sexual harassment" as "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee." Wyerick v. Bayou Steel Corp., 887 F.2d 1271, 1274 (5th Cir. 1989). Thus, in Ellert v. Univ. of Texas at Dallas, we found no sexual harassment where there was no evidence that the alleged harasser discussed sexual matters, initiated any physical contact, or made any threats or promises conditioned on the plaintiff's response to his advances. 52 F.3d 543, 545 (5th Cir. 1995). Similarly, Thomas did not make any overt sexual advances, did not request any sexual favors, did not engage in any verbal or physical conduct that was sexual in nature, and, after Marquez declined his second invitation, Thomas did not extend subsequent similar invitations to her. We therefore agree with the district court that Marquez has failed to show evidence of unwelcome sexual harassment on the part of Thomas.

---

[4] In her deposition, Marquez initially indicated that she did not view Thomas's invitations as a request for a date, but she later said that she did consider them as sexual in nature and as invitations for a date.

Although that should end the point, we will take time to address Marquez's contention that she presented evidence that Voicestream's stated reason for terminating her employment was pretextual. She accurately notes that the RSMMEP does not mandate termination for managers who score below 75% on the first audit and below 85% on the second audit. The RSMMEP provides that managers whose scores do not meet the minimum requirements may be subject to disciplinary action, which may include termination. Marquez cites the fact that no other managers have been subjected to termination for failing to meet the minimum requirements. This evidence, however, ultimately fails to show that she was treated differently; she presented no evidence that any manager, except herself, had failed to achieve the required scores.

Marquez further contends that the RSMMEP provides that only a manager who scores less than 85% on two re-audits may be terminated and that her termination after only one re-audit is evidence of discrimination. Voicestream disputes her interpretation of the RSMMEP, arguing that the RSMMEP allows for termination after only one re-audit.[5] Regardless of Marquez's understanding of Voicestream's disciplinary policy, she was warned by her supervisor at the time that if she failed to score at least 85% on her re-audit, she could be subject to termination. She does not dispute

---

[5] The RSMMEP section entitled "Operational Discipline" reads: "If a score of at least 85% is not achieved during either of the two follow-up audits, the manager will be subject to disciplinary action, up to and including termination."

the accuracy of the scores.[6]  Because she does not show that she was treated differently from similarly situated managers, and because she knew that she could be fired if she scored less than 85%, Marquez did not present evidence of pretext sufficient to raise a genuine issue of material fact concerning the pretextual nature of Voicestream's proffered reason for terminating her employment.  Therefore, even if Marquez could be said to have made a prima facie case, the district court's granting of Voicestream's motion for summary judgment would have been proper because her evidence fails to show that the stated reason for her discharge was pretext.

Next, we turn to the grant of summary judgment on the retaliation claim.  To make a prima facie case for retaliation, Marquez must produce evidence that she engaged in activity protected under Title VII, suffered an adverse employment action, and that there is a causal connection between the Title VII protected activity and the adverse employment action.  Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002).

We need only address whether Marquez produced evidence that she engaged in protected activity.  In doing so, we find that Marquez has failed to make a prima facie retaliation claim because her phone conversations with Brock in which she described Thomas's

---

[6] She scored 64% on the initial audit and 83% on the re-audit.

6

conduct do not constitute protected activity. Brock was an office manager in Albuquerque, New Mexico and was responsible for compiling sales and inventory data from all of the New Mexico and El Paso stores. The phone conversations relied on by Marquez were initiated by Brock—not by Marquez—and occurred in the routine course of compiling this data. There is no evidence that Marquez alleged any unlawful activity (sexual harassment) on Thomas's part during these conversations. Marquez only mentioned that Thomas had asked her to go out for a drink on two occasions. There is nothing in the record that she protested or objected that these invitations were sexual harassment or otherwise unwelcomed. Without an allegation that she reported unlawful activity (even assuming Brock to be an appropriate person to receive such a report) Marquez' conversations with Brock were not protected activity. See Watts v. Kroger Co., 170 F.3d 505, 511 (5th Cir. 1999).

We have examined the briefs, the record, and the district court's opinion, and we find no reversible error in its legal analysis or in its application of that analysis to the facts of this case. Therefore, for the above reasons the judgment of the district court is in all respects

AFFIRMED.