

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00824-CV

**VICTORY CAPITAL MANAGEMENT, INC.**,
Appellant

v.

Julianne **BASS**,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2023-CI-01737
Honorable Mary Lou Alvarez, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Irene Rios, Justice
            Adrian A. Spears II, Justice
            H. Todd McCray, Justice

Delivered and Filed: May 21, 2025

REVERSED AND REMANDED

In this accelerated interlocutory appeal, appellant Victory Capital Management, Inc. ("Victory Capital") appeals the trial court's order granting appellee Julianne Bass's motion to lift the stay and reinstate Bass's lawsuit pursuant to the federal Ending Forced Arbitration of Sexual

Assault and Sexual Harassment Act of 2021 (the "EFAA"), thereby reversing the trial court's prior order compelling the parties to arbitrate.[1] *See* 9 U.S.C.A. § 402(a).

We reverse the trial court's order lifting the stay and reinstating the case. The cause is remanded to the trial court so it can reinstate the stay and compel arbitration pursuant to the parties' arbitration agreement.

## BACKGROUND

Bass was employed by Victory Capital. While employed with Victory Capital, Bass signed a valid arbitration agreement. At some point, Bass's employment with Victory Capital was terminated. Following her termination of employment, Bass sued Victory Capital asserting claims for age and sex/gender discrimination and retaliation under sections 21.051 and 21.055 of the Texas Labor Code. *See* TEX. LABOR CODE ANN. §§ 21.051, 21.055. Initially, Victory Capital filed an unopposed motion to compel arbitration and stay Bass's lawsuit, which the trial court granted. After Victory Capital filed its unopposed motion, Bass filed a motion to lift the stay and reinstate the lawsuit. To support her motion, Bass claimed sexual harassment lawsuits are not subject to forced arbitration under the EFAA. Following a hearing, the trial court granted Bass's motion by order dated August 11, 2023. Victory Capital appeals.

## STANDARD OF REVIEW

We review a trial court's order to grant or lift an arbitration stay for an abuse of discretion. *See ReadyOne Indus., Inc. v. Lopez*, 551 S.W.3d 305, 310 (Tex. App.—El Paso 2018, pet. denied); *Garcia v. Huerta*, 340 S.W.3d 864, 869 (Tex. App.—San Antonio 2011, pet. denied); *see also Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Under this standard, we will reverse the

---

[1] An order lifting a previously imposed stay is considered an order "refusing a stay" for purposes of the Federal Arbitration Act, which is subject to an interlocutory appeal. *See Vets Securing Am., Inc. v. Smith*, 632 S.W.3d 272, 278 (Tex. App.—Corpus Christi–Edinburg 2021, pet. denied); *see also* 9 U.S.C.A. § 16(a)(1)(A); TEX. CIV. PRAC. & REM. CODE ANN. § 51.016.

trial court's ruling only when the court "acts in an arbitrary or unreasonable manner, without reference to any guiding rules or principles." *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002).

Because the trial court did not issue findings of fact or conclusions of law to explain its reasons for lifting the stay and reinstating the case, we must uphold the trial court's decision on any appropriate legal theory urged below. *QualiZeal, Inc. v. Cigniti Techs., Inc.*, No. 05-22-00923-CV, 2024 WL 833439, at *4 (Tex. App.—Dallas Feb. 28, 2024, no pet.) (mem. op.); *Bonded Builders Home Warranty Ass'n of Tex. v. Rockoff*, 509 S.W.3d 523, 531–32 (Tex. App.—El Paso 2016, no pet.).

### ISSUE ON APPEAL

In a single issue, Victory Capital challenges whether Bass adequately pled a sexual harassment claim, as defined by the EFAA, such that her claims are governed by the EFAA and not subject to arbitration.

### APPLICABLE LAW-EFAA

Absent an exception under the Federal Arbitration Act ("the Act"), federal law requires the enforcement of valid agreements to arbitrate *See* 9 U.S.C.A. § 2. An exception under the Act—as is in question here—provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C.A. § 402(a).[2] The EFAA is an amendment to the Act and became effective March 3, 2022. *See* Pub. L. No. 117–90, § 3, 136 Stat. 26, 28 (2022).

Whether the EFAA applies to a dispute is a question for the courts and "shall be determined under Federal law." 9 U.S.C.A. § 402(b). When a party alleges "conduct constituting a sexual harassment dispute," the EFAA makes pre-dispute arbitration agreements unenforceable "with respect to a case which is filed under Federal, Tribal, or State law and relates to . . . the sexual harassment dispute." *Id*. § 402(a). The EFAA defines a "sexual harassment dispute" as a "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4). Bass brought her claims under chapter 21 of the Texas Labor Code.

Under the Texas Labor Code,

> '[s]exual harassment' means an unwelcome sexual advance, a request for a sexual favor, or any other verbal or physical conduct of a sexual nature if:
>
> (A) submission to the advance, request, or conduct is made a term or condition of an individual's employment, either explicitly or implicitly;
>
> (B) submission to or rejection of the advance, request, or conduct by an individual is used as the basis for a decision affecting the individual's employment;
>
> (C) the advance, request, or conduct has the purpose or effect of unreasonably interfering with an individual's work performance; or
>
> (D) the advance, request, or conduct has the purpose or effect of creating an intimidating, hostile, or offensive working environment.

TEX. LABOR CODE ANN. § 21.141(2).

---

[2] It is undisputed that Bass neither pled nor claims on appeal that she is a victim of sexual assault. Thus, the portion of the exception under the EFAA applicable to "sexual assault dispute[s]" does not apply to this appeal. *See* 9 U.S.C.A. § 402(a).

**ANALYSIS**

*A. Bass's Allegations Contained in her Original Petition*

Bass alleges in her original petition—the live petition at the time the trial court lifted the stay and reinstated her lawsuit—the following facts:

- During a performance review, her supervisor told her that "she needed to not be seen as driven or opinionated, but as 'thoughtful and nice.'" The supervisor added that Bass "needed to be 'really, really' nice."

- When co-workers would assert that Bass would make unsupported accusations of sexism, Bass's supervisor appeared to agree with the co-workers and "often indicated that he believes [Bass] makes men behave in rude ways."

- Bass claimed her supervisor expected her to "speak up at investment meetings[] but would not apply the same expectation to male co-workers." Bass's supervisor counseled her "for allegedly making men feel inferior[,]" but did not "similarly counsel the male co-workers for making Bass feel uncomfortable." Bass's supervisor "raised his voice" at Bass, "but did not similarly raise his voice to male portfolio managers."

- Bass's supervisor "made a joke about sex harassment regarding a mandatory training session on sex harassment."

- After complaining about being "publicly disparaged" by a co-worker for advice she had provided to an investor regarding a trade, Bass's supervisor told her the report was not helpful and indicated he would not take any action. However, on the same day Bass reported the incident, she received an email from her supervisor telling her to "not publicly disparage trades" made by the same co-worker.

- Apparently, Bass was removed from managing a successful fund and assigned a more challenging fund. When Bass asked her supervisor whether he recommended she no longer manage the successful fund, the president of the company accused Bass of humiliating her supervisor and asked Bass to apologize to her supervisor and everyone who "'might' have heard her 'humiliate'" her supervisor.

- Bass's bonus or revenue share was reduced substantially from the previous year because, according to the president of the company, Bass did not get along with her supervisor, and did not make sufficient progress with her "assigned job coach[.]"

- After further reduction in her revenue share as well as job duties, Bass's supervisor "said he wanted to favor younger workers when they distribute the revenue share." Most of her other co-workers that were younger, including Bass's supervisor, were male.

- Bass's supervisor asked her to improve a male co-worker's morale. When the co-worker spoke to Bass in an allegedly disrespectful manner and told her he did not need her to train him and asked her not to send him any more emails, Bass reported the co-worker to human resources. In response to her complaint, the Human Resource Manager told Bass she was "'too sensitive[.]'"

- Bass alleges actions were taken to demote her, substantially reduce her compensation, and eventually terminate her because she reported the discriminatory behavior she experienced.

Citing sections 21.051 and 21.055 of the Texas Labor Code, Bass asserts in her original petition that she suffered discrimination based on her age and sex/gender, and she alleges she was the victim of retaliation after she complained of the discrimination. *See* TEX. LABOR CODE ANN. § 21.051 (providing it is unlawful to discriminate against an employee based on the employee's "race, color, disability, religion, sex, national origin, or age"), § 21.055 (providing it is unlawful to retaliate against an employee who opposes or complains about a discriminatory practice or who testifies, assists, or participates in any manner in an investigation, proceeding, or hearing).

### B. Applicability of the EFAA to Bass's Allegations

On appeal, the parties do not challenge the validity of the arbitration provision within their agreement. Rather, Victory Capital contends that the trial court erred in applying the EFAA to exempt Bass's claims from arbitration. Specifically, Victory Capital argues Bass failed to allege in her petition conduct constituting a sexual harassment dispute that would subject her claims to the EFAA. Instead, Victory Capital maintains Bass alleged age and sex/gender discrimination and retaliation claims that the EFAA does not cover. We agree.

In her original petition, Bass refers only to two statutes: one addressing discrimination based on race, color, disability, religion, sex, national origin, or age; and the other addressing retaliation. *See id.* §§ 21.051, 21.055. At no point does she reference or contend Victory Capital engaged in unlawful employment practices associated with sexual harassment under sections 21.141 and 21.142 of the Texas Labor Code. *See id.* §§ 21.141, 21.142.

Bass acknowledges in her appellate brief that she "does not claim any worker or supervisor sought sexual favors from her." Nevertheless, Bass contends that sexual harassment includes allegations regarding a person's sex or gender with respect to complaints associated with a hostile work environment, arguing that sex discrimination and sexual harassment are so intertwined that her allegations constitute sexual harassment claims. The statutory interpretation of the sexual harassment statutes, however, does not support Bass's argument.

"Issues of statutory construction are reviewed de novo." *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017). "In construing a statute, our objective is to determine and give effect to the [l]egislature's intent." *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022). We "presume the [l]egislature chose the statute's language with care, purposefully choosing each word, while purposefully omitting words not chosen." *In re CenterPoint Energy Hous. Elec., LLC*, 629 S.W.3d 149, 158–59 (Tex. 2021) (orig. proceeding).

However, we also recognize it is "a fundamental principle of statutory construction that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used." *Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 39 (Tex. 2018). "In ascertaining legislative intent, we read the entire statute as a whole and do not consider isolated sections, provisions, or terms in a vacuum." *EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.*, 554 S.W.3d 572, 582 (Tex. 2018). We presume the legislature wants all statutory provisions to be fully effective, and we may insert additional words into a statutory provision only when it is necessary to give effect to the clear legislative intent. *DLB Architects, P.C. v. Weaver*, 305 S.W.3d 407, 409 (Tex. App.—Dallas 2010, pet. denied) (citing *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 552 (Tex. 1981)); *see also* TEX. GOV'T CODE ANN. § 311.021. Thus, we must construe statutes in a way that harmonizes and gives effect to the different

provisions when possible. *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 716 (Tex. 2015) (orig. proceeding) (citing TEX. GOV'T CODE ANN. §§ 311.025, 311.026(a)); *Tex. Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., LLC*, 324 S.W.3d 95, 107 (Tex. 2010).

Federal statutory construction is approached much the same way. "'Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.'" *SJ Med. Ctr., LLC v. Anozie*, 694 S.W.3d 915, 921 (Tex. App.—Houston [14th Dist.] 2024, no pet.) (quoting *Dolan v. Postal Service*, 546 U.S. 481, 486 (2006)) (applying statutory construction in determining the EFAA's applicability to an alleged sexual assault dispute case); *see also Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995).

As directed by the EFAA, a "sexual harassment dispute" is a "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C.A. § 401(4). And as previously stated, Bass brought her claims under the Texas Labor Code, which defines sexual harassment as "an unwelcome sexual advance, a request for a sexual favor, or any other verbal or physical conduct of a sexual nature **if** . . . the advance, request, or conduct has the purpose or effect of creating an intimidating, hostile, or offensive working environment." TEX. LABOR CODE ANN. § 21.141(2)(D) (emphasis added). Thus, to support Bass's position, she would have us limit the definition of sexual harassment only to the subordinate clause—the conduct having the purpose or effect of creating an intimidating, hostile, or offensive working environment—that follows the subordinate conjunction "if." This approach ignores the main clause—an unwelcome sexual advance, a request for a sexual favor, or any other verbal or physical conduct of a sexual nature—on which the subordinate clause depends. This result would render the main clause of the subsection meaningless. *See Creative Oil & Gas, LLC v. Lona Hills Ranch,*

*LLC*, 591 S.W.3d 127, 133 (Tex. 2019) (holding our "approach to statutory construction requires us to study the language of the specific provision at issue, within the context of the statute as a whole, endeavoring to give effect to every word, clause, and sentence"); *see also* Tex. Gov't Code Ann. § 311.026(a). We enforce the plain meaning of the statutory text "unless a different meaning is supplied by statutory definition, is apparent from the context, or the plain meaning would lead to an absurd or nonsensical result[.]" *Creative Oil & Gas*, 591 S.W.3d at 133. Because we may not construe statutes in a way that would lead to an absurd or nonsensical result, allegations of sexual harassment must result from "an unwelcome sexual advance, a request for a sexual favor, or any other verbal or physical conduct of a sexual nature[.]" Tex. Labor Code Ann. § 21.141(2); *see also Creative Oil & Gas*, 591 S.W.3d at 133.

Moreover, we do not read statutory provisions in isolation from one another. Instead, we presume the legislature intended to create a cohesive statutory framework that gives effect to every provision; thus, we read statutes within the context of the entire statutory framework and must "strive to give the provision a meaning that is in harmony with other related statutes." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018); *see also City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 184 (Tex. 2022) (internal quotation marks omitted) ("Indeed, we consider the context and framework of the entire statute and meld its words into a cohesive reflection of legislative intent."). Therefore, under Texas Labor Code chapter 21's framework, age and sex/gender discrimination and retaliation are set forth under subchapter B, while claims concerning sexual harassment are under subchapter C-1. *See* Tex. Labor Code Ann. §§ 21.051, 21.055, 21.141, 21.142. We conclude the legislature purposely enacted these separate statutes and did not intend to conflate them.

Bass relies on several cases that set forth what a plaintiff must show to prove a sexual harassment claim based on a hostile work environment. Most notably, Bass directs us to both the reversed opinion from this court and the supreme court's opinion reversing this court in *Alamo Heights Independent School District*. *See Alamo Heights Indep. Sch. Dist. v. Clark*, No. 04-14-00746-CV, 2015 WL 6163252 (Tex. App.—San Antonio Oct. 21, 2015) (mem. op.), *rev'd*, 544 S.W.3d 755 (Tex. 2018). Specifically, Bass asserts that to prove sexual harassment based on a hostile work environment, a plaintiff must show: "(1) she was subjected to unwelcome sexual harassment, (2) she was harassed because of her sex[/gender], (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile work environment; and (4) some basis for holding the employer liable."[3] *See Alamo Heights*, 544 S.W.3d at 771; *see also Gulf States Toyota, Inc. v. Morgan*, 89 S.W.3d 766, 770 (Tex. App.—Houston [1st Dist.] 2002, no pet.). While we do not dispute the elements a plaintiff must show to prove sexual harassment based on a hostile work environment, we first note *Alamo Heights* was decided in 2018, and subsection C-1 to chapter 21 of the Texas Labor Code, which includes section 21.141 defining sexual harassment, was codified and made effective September 1, 2021. *See Alamo Heights*, 544 S.W.3d at 755; *City of Houston v. Carter*, No. 01-22-00453-CV, 2023 WL 3632788, at *10 (Tex. App.—Houston [1st Dist.] May 25, 2023 no pet.) (citing *Alamo Heights*, 544 S.W.3d at 771); *see also* Act of May 14, 2021, 87th Leg., R.S., ch. 172, §§ 2–3, 2021 Tex. Gen. Laws 378, 379 (codified at Tex. Labor Code Ann. § 21.141(2)).

---

[3] Rather than quote the elements of sexual harassment based on a hostile work environment set forth in the Texas Supreme Court's *Alamo Heights*, Bass, in her appellate brief, quotes the elements from our *Alamo Heights* reversed decision. Here, we quote the elements as outlined in the Texas Supreme Court's *Alamo Heights* opinion as they are essentially the same as those in our opinion. *See Alamo Heights Indep. Sch. Dist. v. Clark*, No. 04-14-00746-CV, 2015 WL 6163252, at *4 (Tex. App.—San Antonio Oct. 21, 2015), *rev'd*, 544 S.W.3d 755, 771 (Tex. 2018).

Furthermore, Bass focuses only on the elements regarding her gender, how the alleged conduct affected her employment, and that she reported the conduct. Bass wholly ignores the element requiring she show her subjection to "unwelcome[d] sexual harassment." *See Alamo Heights*, 544 S.W.3d at 771; *Carter*, 2023 WL 3632788, at \*10. With respect to this element, even before the Texas Labor Code defined "sexual harassment," "[c]ourts [had] traditionally defined 'unwelcome sexual harassment' as 'sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee.'" *Willborn v. Formosa Plastics Corp. Tex.*, No. 13-04-007-CV, 2005 WL 1797022, at \*7 (Tex. App.—Corpus Christi–Edinburg July 28, 2005, pet. denied) (quoting *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir.1989)).

Bass's allegations do not contain complaints of "an unwelcome sexual advance, a request for a sexual favor, or any other verbal or physical conduct of a sexual nature[,]" and do not fall within the Texas Labor Code's definition of sexual harassment as required to exempt her claims from arbitration under the EFAA. TEX. LABOR CODE ANN. § 21.141(2); *see also* 9 U.S.C.A. § 401(4). Even though Bass alleged she was subjected to a hostile work environment, none of her allegations are "sexual in nature" nor does she allege she was subjected to "sexual harassment" as it is defined in the caselaw or the Texas Labor Code. We conclude Bass has failed to adequately plead a sexual harassment claim, as is required by the EFAA. Because her claims do not implicate the EFAA, they are not exempted from arbitration under the EFAA.

Accordingly, we sustain Victory Capital's sole issue.

## CONCLUSION

Having sustained Victory Capital's sole issue on appeal, we reverse the trial court's August 11, 2023 order granting Bass's motion to lift stay and reinstate the lawsuit. We remand the cause

to the trial court and order the trial court to vacate its August 11, 2023 order and stay the cause pending binding arbitration pursuant to the parties' arbitration agreement.

Irene Rios, Justice