

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| BONDED BUILDERS HOME | | |
| WARRANTY ASSOCIATION | § | No. 08-14-00090-CV |
| OF TEXAS D/B/A BONDED | | |
| BUILDERS WARRANTY GROUP, | § | Appeal from |
| DANIEL AVILA, | | |
| GRISELE EDITH ARIZPE, AND | § | 327th District Court |
| AA BUILDERS, LLC, | | |
| | § | of El Paso County, Texas |
| Appellants, | | |
| | § | (TC # 2013DCV4125) |
| v. | | |
| | § | |
| PATRICIA ROCKOFF, | | |
| | § | |
| Appellee. | | |
| | § | |

**O P I N I O N**

This is an interlocutory appeal from the denial of motions to compel arbitration. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 51.016 (West Supp. 2015)(permitting an interlocutory appeal from the denial of a motion to compel arbitration under the Federal Arbitration Act). Appellants raise a single issue contending the trial court erred in not compelling arbitration. We sustain that issue and remand the case to address one remaining issue: whether the cost issues raised by the arbitration agreement render it procedurally unconscionable.

## FACTUAL SUMMARY

AA Builders, LLC, constructed a home at 3715 Laguna Court in El Paso, Texas. Appellants Grisele Arizpe and Daniel Avila are alleged to be the general partners of AA Builders, LLC (collectively we refer to all three as "AA Builders"). The original homeowners of 3715 Laguna Court obtained a new home warranty on the residence from Bonded Builders Home Warranty Association of Texas d/b/a Bonded Builders Warranty Group ("BBWG"). The original homeowners then sold the house to Appellee Patricia Rockoff in July 2013. By paying a $40.00 processing fee to BBWG, the warranty was transferred to her on July 11, 2013.

Shortly after acquiring the property she noticed cracks in the walls of the house which she attributes to the failure of load-bearing walls. It appears that the house was built on a lot that was cut and filled, meaning that some portion of the lot was graded away and other portions filled in to level the property. One of Rockoff's allegations is that a portion of the house was built over the fill dirt which was insufficiently engineered or compacted such that it could not carry the weight of the house. Rockoff first complained to AA Builders who denied her claim. Rockoff then made a warranty claim with BBWG.

There are two distinct warranties provided by BBWG on the home. The first is called the "Workmanship, Materials and Systems Warranty." Under that particular warranty, AA Builders warranted that the house meets certain specified construction performance standards detailed in the warranty document. One of those standards, for instance, states that a slab foundation should not tilt or deflect in excess of one percent from the original construction elevations. If there is a breach of one of those the standards, AA Builders would be primarily obligated to repair or replace the defective item under the terms of the warranty. BBWG in turn acts only as the guarantor and meets AA Builder's obligation if either: (1) it is unwilling or unable to comply

with the terms of the warranty, or (2) following the alternative dispute resolution procedures and arbitration called for in the agreement, AA Builders refuses to or is unable to comply with the arbitration award.

Under the Workmanship, Materials and Systems Warranty, the homeowner is obligated to first contact AA Builders to make a claim. If the homeowner and AA Builders are unable to resolve their issues, the homeowner submits a claim form to BBWG who then contacts the builder to attempt to gain their compliance. Any dispute after that point must be submitted through BBWG's "conciliation process." That process contemplates that a conciliator, appointed by BBWG, meets with all the parties at the house, and then issues a non-binding award if no agreement is reached. Unless all parties accept that non-binding recommendation, the dispute is then submitted to a "Claim Review Group" consisting of the conciliator, a qualified representative for the homeowner, and AA Builders. If this meeting does not resolve matters, any dispute must be submitted "to binding arbitration pursuant to the terms and conditions of the Arbitration Section of this warranty." BBWG pays the cost of the conciliation process, other than the cost of the representative the homeowner may hire to participate in the Claim Review Group.

A second warranty, referred to as the "Express Limited Major Structural Defect Warranty," has its own unique set of provisions. This warranty covers damage to designated load-bearing walls that are impaired to the extent that the house becomes "unsafe, unsanitary, or otherwise unlivable." Under this warranty, BBWG is primarily obligated to repair or replace covered defects. To make a claim, the homeowner first completes a designated form which is sent to BBWG. Any dispute under the terms of this warranty must be referred to mediation, with each party paying their share of the mediation expense. If not resolved by mediation, any dispute

must again be submitted to "binding arbitration pursuant to the terms and conditions of the Arbitration Section of this warranty."

The Arbitration Section of the warranty first contains a broad agreement to arbitrate disputes:

> In the event any Dispute under any BBWG warranty, including without limitation, a claim of subrogation, negligent or intentional misrepresentation or nondisclosure in the inducement, breach of any alleged duty of good faith and fair dealing, and/or any dispute over the scope of this Arbitration Provision, cannot be resolved by one of the Alternative Dispute Resolution processes described herein, You, the Builder and BBWG agree to submit the Dispute to binding arbitration…. By accepting the warranty, You are agreeing to waive Your right to a trial by either judge or jury in a court of law."

The term "Dispute" is defined to include "any dispute, controversy, claim or matters in question . . . between Builder, You, Your successors in interest and/or BBWG arising out of or relating to this Warranty. . . . " The Arbitration Section has several other terms which bear on the parties arguments raised in this appeal. One term addresses selection of the arbitrator:

> You will have the right to select the arbitration company from the list of approved arbitration companies BBWG will provide to You when arbitration is requested. The arbitration will be conducted under the arbitration company's rules in effect at the time of the arbitration.

Another term addresses payment of the expenses of the arbitration:

> The arbitrator's compensation fee, administrative fee and all expenses charged by the arbitrator and/or the arbitration service shall be borne equally by the arbitrating parties. Each party shall pay their own attorney fees and expenses. Additional fees may be assessed in accordance with the arbitration company rules and fees. The arbitrator shall have the discretion to reallocate such fees and expenses, save and except attorney's fees, in the interest of justice.

Two provisions address initiation of arbitration:

> Any party who shall commence a judicial proceeding concerning a dispute, which is arbitrable hereunder, shall also be deemed to be a party requesting arbitration within the meaning of this paragraph.
> ….

Arbitration may be demanded at any time, but only after completion of all conditions precedent, and may be compelled by summary proceedings in Court.

The agreement is made expressly subject to the Federal Arbitration Act (Title 9 of the United States Code), and contains a savings clause:

If any provision of this arbitration agreement shall be determined to be unenforceable by the arbitrator or by the court, the remaining provisions shall be deemed to be severable there from and enforceable according to their terms.

The "General Conditions" section of the warranty provides that the homeowner's sole remedy against AA Builders, and all those associated with it, is under the terms and conditions of the warranty. This exclusive remedy agreement is "enforceable to the fullest extent permissible by the law of the state in which the property is located . . . ." Likewise, to the extent permitted by the applicable state law, the homeowner waives any implied warranties.

The General Conditions also provides that each party is to pay their own litigation costs and "under no circumstances shall any party, prevailing or otherwise be entitled to an award and/or judgment which includes or provides for attorney's fees and/or court costs." The General Conditions section contains its own severability clause which provides that should a court find any provision unenforceable, the remaining portions of this warranty will still be effective.

On September 9, 2013, Rockoff sent notice to AA Builders which promptly denied her claim. On October 10, 2013, she then completed BBWG's designated claim forms for *both* the warranty sections set out above. On October 25, 2013, BBWG sent her a letter stating that it would assign a conciliator after she completed an additional enclosed form. The next correspondence in the record, however, is a November 4, 2013, demand letter from Rockoff's attorney to BBWG demanding payment of the entire limit under the warranty.[1] On the same day, Rockoff also filed suit against AA Builders and BBWG asserting claims under the Texas

---

[1] The warranty states that its aggregate limit is $245,000.00. The warranty has many more terms, limitations, and exclusions which we have not attempted to fully set out in this opinion.

Deceptive Trade Practices Act, and specifically asserting a breach of express and implied warranties pertaining to the BBWG's warranty. She later added claims for negligence and breach of implied warranties under the Texas Property Code. Her suit also seeks declaratory relief, which in part contends that the arbitration clause is unconscionable and unenforceable.

Both AA Builders and BBWG filed motions to compel arbitration. Rockoff filed a response, which after setting out various legal principles governing arbitration, recites in forty-two numbered paragraphs "factors for consideration by the court." Some of the paragraphs are simply statements of factual matters she claims are supported by certain referenced exhibits. Other paragraphs could (charitably) be viewed as specific reasons why the arbitration clause was substantively or procedurally unconscionable.

We have carefully reviewed the Rockoff's response, and her arguments at the hearing, and discern that she raised the following objections to arbitration:

- The scope of the arbitration provision is not broad enough to encompass all of Rockoff's claims under the Texas Deceptive Trade Practices Act, the Texas Declaratory Judgment Act, or her theories of alter ego, civil conspiracy, negligence, breach of implied warranty of good and workmanlike construction of residential property and/or habitability.

- AA Builders and BBWG materially breached the agreement which excuses Rockoff's performance under the arbitration clause, (or it failed to meet a condition precedent). Specifically, she contends that BBWG failed to contact AA Builders to attempt to get them to remedy the problem, and then it failed to appoint a conciliator.

- The agreement is substantively unconscionable because it limits her claims and remedies. Specifically, it requires Rockoff to pay her own attorney's fees and costs, despite provisions in the DTPA and court rules which would permit her to recover those if she were a prevailing litigant. It disclaims implied warranties and denies her the ability to seek injunctive relief because "[t]he arbitrator can't issue an injunction."

- The agreement is substantively unconscionable because it fails to designate a neutral third party arbitration organization. Instead, BBWG has the sole right to

designate the pool of potential arbitration firms and thus "unconscionably controls selection of the arbitration organization." The agreement itself fails to designate how the selected arbitration firm would designate qualified arbitrator(s), what rules might apply, or dictate that arbitration should be in El Paso.[2]

- The agreement is procedurally unconscionable because Rockoff had no ability or power to negotiate any of the language of the warranty, the terms of the agreement were never explained to her, the arbitration clause was not conspicuous, and she never signed any document signifying her approval of the arbitration agreement.

Rockoff also claimed that the cost of arbitration would exceed litigation costs, which under the agreement must be borne equally by the parties. She contended, however, that until the identity of the proposed arbitrator is actually known, there was no way to complete that cost analysis. ("You've got to know who the arbitrator is, you've got to know what rules of arbitration are going to apply. So, we're not even in a position to make that analysis at this point.") Consistent with an interrogatory answer, BBWG asserted that in the past it had designated the America Arbitration Association (AAA) and Construction Dispute Resolution Services, LLC as suitable arbitration companies. It did not stipulate, nor can we find anywhere in the record, that these were the arbitration firms being designated for this particular dispute.[3] The trial court denied the motion to compel arbitration, and was not requested to, nor did it file, findings of fact and conclusions of law explaining its decision.

## FRAMEWORK FOR REVIEW

A party seeking to compel arbitration must (1) establish the existence of a valid arbitration agreement; and (2) demonstrate that the claims asserted are within the scope of the agreement. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005); *Delfingen US-*

---

[2] At the hearing, BBWG and AA Builders agreed that any arbitration would be in El Paso.

[3] The consolidated brief of BBWG and AA Builders to this Court now stipulates that AAA and Construction Dispute Resolution Services, LLC will be included on the list to be provided Rockoff. Their brief was filed August 12, 2014 and is the first reference we find that Appellants concretely proposed particular arbitrators for this matter.

*Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 797 (Tex.App.--El Paso 2013, no pet.). While this particular arbitration agreement is governed by the Federal Arbitration Act (FAA), state contract law principles determine whether there is a valid underlying contract requiring arbitration. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Delfingen,* 407 S.W.3d at 797. We review *de novo* a trial court's determination as to the existence of a valid agreement to arbitrate. *See In re Labatt Food Serv.*, *L.P.*, 279 S.W.3d 640, 643 (Tex. 2009)(orig.proceeding); *J.M. Davidson*, 128 S.W.3d at 227. The second inquiry--whether a particular claim is subject to the arbitration clause--is decided in light of the federal policy and presumption favoring arbitration under the FAA. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *accord Ellis v. Schlimmer*, 337 S.W.3d 860, 861-62 (Tex. 2011); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898-99 (Tex. 1995)(orig.proceeding).

If the proponent of arbitration proves the existence of a valid agreement which covers the dispute, then the burden shifts to the resisting party to raise an affirmative defense to enforcing that agreement. *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015); *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008)(orig. proceeding); *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex. 1999). So long as there are no factual disputes, defenses to arbitration such as waiver or unconscionability are legal issues also subject to *de novo* review. *Lopez*, 467 S.W.3d at 499; *In re Poly-America, L.P.*, 262 S.W.3d at 348; *Delfingen*, 407 S.W.3d at 798. The determination of any facts relevant to a defense is for the trial court which we review deferentially for record support under the abuse of discretion standard. *Delfingen*, 407 S.W.3d at 798-800.

Because the trial court here did not enter findings of fact or conclusions of law to explain its denial of the motion to compel, we must uphold the trial court's decision on any appropriate

legal theory urged below. *Shamrock Foods Co. v. Munn & Assocs., Ltd.*, 392 S.W.3d 839, 844 (Tex.App.--Texarkana 2013, no pet.); *Inland Sea, Inc. v. Castro*, 420 S.W.3d 55, 57-59 (Tex.App.--El Paso 2012, pet. denied)(affirming denial of motion to compel arbitration on alternative ground where order did not specify the basis for the ruling); *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 854 (Tex.App.--Houston [14th Dist.] 2007, orig. proceeding).

## EXISTENCE OF AN ARBITRATION AGREEMENT COVERING THIS DISPUTE

BBWG and AA Builders satisfied their initial burden of demonstrating the existence of a valid arbitration agreement. They attached a copy of the warranty to their motion to compel arbitration which contains the arbitration agreement as set out above. Rockoff's pleadings attached the same warranty document. While Rockoff did not sign any particular document acknowledging or agreeing to the terms of the warranty, the FAA does not require that agreements to arbitrate be signed, so long as they are written and agreed to by the parties. *In re AdvancePCS Health L.P.*, 172 S.W.3d at 606. Assent to arbitration can arise from a party's conduct. *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002)(holding arbitration clause was accepted by continued employment). In this case, Rockoff's assent is found in her filing claims form under the warranty and then suing on the warranty itself. A party seeking the benefits under an agreement cannot simultaneously disclaim knowledge of an arbitration agreement embodied in that same agreement. *See In re Kellogg Brown & Root, Inc*., 166 S.W.3d 732, 741 (Tex. 2005)(party bound to arbitration clause it did not sign "if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision"); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001)("a litigant who sues based on a contract subjects him or herself to the contract's terms.").

Rockoff argued below that the arbitration agreement does not cover all of her theories of liability. We disagree. To determine whether a party's claims fall within the scope of an arbitration agreement, we focus on the complaint's factual allegations rather than the legal causes of action asserted. *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754. Rockoff's petition alleges that because of various failings of AA Builders, the house "began to visibly sink into the ground" and "began experiencing structural distress." These problems are attributed to "bearing capacity failure in the supporting soil underneath the footing areas." The last amended petition alleges direct breaches of the BBWG's warranty, breach of implied warranties in the construction of the house, and negligence in the construction of the house.

The warranty agreement is actually a three party agreement, placing burdens and benefits on the holder of the warranty (Rockoff), BBWG, and AA Builders. The arbitration provision is triggered by any "Dispute" under the BBWG warranty. Both warranty clauses define the term "Dispute" to include "any dispute, controversy, claim or matters in question . . . between Builder, You, Your successors in interest and/or BBWG arising out of or relating to this Warranty including without limitation, a claim of subrogation, negligent or intentional misrepresentation or nondisclosure in the inducement, and breach of any alleged duty of good faith and fair dealing . . . ." This definition used of phrase "relate to" which renders it a "broad arbitration clauses capable of expansive reach." *See PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 262-63 (5th Cir. 2015), *quoting Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). The allegations asserted here fall within the broad scope of this arbitration provision.

On appeal, Rockoff does not contend otherwise, other than to argue that there is not a valid agreement to arbitrate because BBWG retained the right to appoint the pool of potential

arbitrators.  Citing *In re Phelps Dodge Magnet Wire Co.*, 225 S.W.3d 599, 605-06 (Tex.App.--El Paso 2005, orig. proceeding, [mand. denied]), she contends BBWG's control over the potential pool of arbitration firms renders the Arbitration Provision not an arbitration clause at all.  We decided in *Phelps Dodge Magnet Wire* whether a company's "Problem Solving Procedure" constituted a true arbitration agreement or whether it was only an internal employment grievance procedure.  *Id*.  The policy at issue included a multi-step process to resolve disputes between an employee and management, which if unsuccessful, sent the dispute to a five member group made up of salaried and hourly employees.  The employer alternatively retained the right to submit the dispute to an arbitrator if it so chose.  *Id.* at 604.  We held this was not a true arbitration provision because "[t]he entire pool of arbitrators consists of Phelps Dodge employees, making Phelps Dodge the sole arbitrator in resolution of the dispute."  *Id*. at 606; *see also BDO Seidman v. Miller*, 949 S.W.2d 858, 861 (Tex.App.--Austin 1997, writ dism'd w.o.j.)(decided under New York law, agreement which designated employer's partners and board members as decision makers was void); *Manes v. Dallas Baptist College*, 638 S.W.2d 143, 145 (Tex.App.--Dallas 1982, writ ref'd n.r.e.)(one party could not designate its own Board of Trustees to be the final decision maker and then contend the agreement is enforceable as an arbitration agreement).

But these cases are inapposite.  BBWG is obligated to provide a list of potential arbitration firms from which Rockoff then selects one firm.  The word "Arbitration" in the warranty agreement is a defined term, meaning:  "[a]n Alternative Dispute Resolution process wherein the designated *neutral third party* conducts a hearing wherein the parties present live testimony and evidence to the arbitrator."  [Emphasis added].  The definition imposes an obligation that the ultimate arbitrator is a neutral third party, precluding BBWG from designating

-11-

itself or some captive arbitration company as a potential arbitrator. That a neutral third party must arbitrate the dispute distinguishes this case from *Phelps Dodge Magnet Wire, Miller and Manes* where one of the two disputing parties established itself as the decision maker. While we acknowledge that BBWG's control over the pool of arbitration firms might create other problems, we address those concerns in the unconscionability discussion below. But to the extent the trial court denied BBWG and AA Builders' motion to compel arbitration on the basis that they failed to satisfy their initial burden, the trial court erred.

## UNCONSCIONABILITY

The FAA states arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2009). The FAA was enacted "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Nonetheless, the FAA's purpose is to make arbitration agreements "as enforceable as other contracts, but not more so." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 192 (Tex. 2007), *quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). As such, arbitration agreements are subject to traditional state law defenses, including unconscionability. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 1746, 179 L.Ed.2d 742 (2011); *In re Poly-America, L.P.*, 262 S.W.3d at 348.

An arbitration agreement may be unconscionable in one or both of two ways: (1) procedurally, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantively, which refers to the fairness of the arbitration provision itself. *ReadyOne Industries, Inc. v. Flores*, 460 S.W.3d 656, 666-67 (Tex.App.--El Paso 2014, pet.

-12-

denied). The unconscionability defense has a long history at common law. An early decision described an unconscionable contract as one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Earl of Chesterfield v. Janssen,* 28 Eng. Rep. 82, 100, 2 Ves. Sr. 125, 155 (1751), *quoted in Venture Cotton Cooperative. v. Freeman*, 435 S.W.3d 222, 228 (Tex. 2014). "The grounds for substantive abuse must be sufficiently shocking or gross to compel the court to intercede, and the same is true for procedural abuse--the circumstances surrounding the negotiations must be shocking." *Delfingen*, 407 S.W.3d at 798.

Unconscionability has no precise legal definition because it is not a concept but a determination to be made in light of a variety of factors. *Id*., *citing Southwestern Bell Telephone Company v. DeLanney*, 809 S.W.2d 493, 498 (Tex. 1991)(Gonzalez, J. concurring). In deciding whether a contract is procedurally unconscionable, "we must examine (1) the entire atmosphere in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the non-bargaining ability of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable." [Internal quotation marks omitted]. *Delfingen,* 407 S.W.3d at 798. The critical inquiry in reviewing an agreement for substantive unconscionability "is whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, a forum where the litigant can effectively vindicate his or her rights." *In re Olshan Foundation Repair Company*, *L.L.C.*, 328 S.W.3d 883, 894 (Tex. 2010)(orig. proceeding). "That inquiry is not satisfied by speculation but by specific proof in the particular case of the arbitral forum's inadequacy." *Venture Cotton Cooperative*, 435 S.W.3d at 232. We measure unconscionability from the point the contract formed. *Delfingen*, 407 S.W.3d at 798.

*Was the Agreement Procedurally Unconscionable?*

Rockoff acknowledges that unconscionability is measured at the time the arbitration agreement is entered into, but she contends that date was when the warranty was assigned to her (rather than when the original homeowners purchased it). Under this premise, she raised below procedural unconscionability--that is, how the agreement was entered into in the first place. Those arguments include such matters as the conspicuousness of the arbitration clause, her lack of bargaining power, and lack of formal assent to the arbitration clause. She does not brief any of these arguments on appeal.

Assignees, third party beneficiaries, and successors in interest are often bound to arbitration clauses that an original contracting party entered into. *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex.App.--Houston [1st Dist.] 2002, no pet.), *citing Capitan Enters., Inc. v. Jackson,* 903 S.W.2d 772, 775 (Tex.App.--El Paso 1994, writ denied); *Carlin v. 3V Inc.*, 928 S.W.2d 291, 294 (Tex.App.--Houston [14th Dist.] 1996, no pet.)(collecting cases). The logical extension of this principle is that the assignee, third party beneficiary, or successor interest has no greater defenses than the original contracting party. Stated otherwise, defenses such as unconscionability are defined by the events surrounding the initial contract. That would seem particularly true here, when both parties agree there was no negotiation involved in transferring the balance of the warranty term to Rockoff. Neither the length of the warranty, or its substantive provisions were changed in any respect. She did no more than step into the shoes of the original home owners who secured the warranty. And because there was no evidence before the trial court regarding any of the factors governing procedural unconscionability as to the original homeowners, there would be no basis to find the warranty procedurally unconscionable. To the extent the trial court did so, it erred.

-14-

*Does One Party's Right to Designate the Pool of Potential Arbitrators*
*Make the Agreement Substantively Unconscionable?*

Rockoff also contends that the arbitration clause is unconscionable because BBWG has the sole right to designate the pool of potential arbitration firms (from which she is to select one of her choosing). Rockoff's argument is premised on the possibility that BBWG would only designate those arbitration firms that it thought would favor its position, thus denying Rockoff an impartial decision maker.

Several federal court decisions are supportive of her position. In *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999), the court analyzed an arbitration clause that in multiple ways favored an employer over its employees in resolving disputes. An aggrieved employee was required to file a statement of claims and list of witnesses, setting out contentions along with a summary of the evidence supporting them. The employer was required to file nothing. *Id.* Once the arbitration started, the employee's contentions were limited by the claim statement, but the employer could add new issues as it wished. *Id.* at 939. And as germane here, the employer provided a list of potential arbitrators from which the employee and employer would then make one selection, with the two arbitrators then selecting a third from the list. But there were apparently no restrictions on whom the company could place on the list. *Id.* at 938. The employee in *Hooters* developed a record that the arbitration scheme as a whole was so one sided that reputable arbitration firms would have refused to participate in it.[4] The court concluded that the rules were so "egregiously unfair" as to breach a duty of good faith the court read into the contract. *Id.* at 940.

---

[4] As an example, a senior vice president of the American Arbitration Association (AAA), testified that "the system established by the Hooters rules so deviated from minimum due process standards that the Association would refuse to arbitrate under those rules" *Id.* at 939.

The arbitration selection issue was more squarely addressed in *McMullen v. Meijer, Inc.,* 355 F.3d 485, 488, 493-94 (6th Cir. 2004) which on the basis of the arbitrator selection provision alone, prompted the court to hold the provision unenforceable.  There, the employer would select a pool of at least five arbitrators who could not be employed by or affiliated with the employer and who must generally be recognized as a neutral.  *Id*. at 488.  Noting the plan was considerably more even handed than that in *Hooters*, the court nonetheless found it risked a "symbiotic relationship" between the company and the arbitrators, which was apparently evidenced by the use of the same five to seven arbitrators in each of its past arbitration hearings.  *Id*. at 493.  The court remanded the case with instructions for the district court to determine if the selection provision was severable, because under the FAA, the trial court would have the authority to appoint a neutral arbitrator if the parties' selection provision could be severed from the agreement.  *Id.* at 496-97.  *See also Murray v. United Food and Commercial Workers Int'l Union*, 289 F.3d 297, 303-04 (4th Cir. 2002)(court found provision unconscionable where employer created list of potential arbitrators from whom parties then alternatively struck); *Milliner v. Bock Evans Financial Counsel, Ltd*., 114 F.Supp.3d 871 (N.D. Calif. 2015)(allowing plaintiff to select one of three arbitrators from list created by defendant was substantively unconscionable).

On this record, however, we reject the argument that the arbitration selection scheme is unconscionable on its face.  First, as we previously noted, the warranty agreement includes a definition requiring the arbitration to be before a neutral third party.  The warranty therefore imposes an obligation which precludes BBWG from designating a captive arbitration company as a potential source for arbitrators.  If Rockoff discovers that the arbitrator fails that neutrality standard, she of course has remedies.  *See Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*,

437 S.W.3d 518, 519 (Tex. 2014)(setting aside arbitration award on basis of arbitrator's evident partiality). Additionally, the federal cases noted above invalidated schemes where one party designated a pool of specific *arbitrators*. In this agreement, BBWG is to designate potential *arbitration companies*. That distinction places an important step between BBWG and the actual arbitrator, because whatever company Rockoff selects will then present some list of potential arbitrators from which the parties will designate the actual decision maker. *See Lawson v. Archer*, 267 S.W.3d 376, 384 (Tex.App.--Houston [14th Dist.] 2008, no pet.)(agreement which required parties to mutually agree to three neutral arbitrators from designated groups was not unconscionable).

We acknowledge the possibility that BBWG might only designate arbitration companies with only a few available arbitrators whom it trusts, but nothing in this record suggests it has done so in the past. The only evidence in this record is that it has designated the American Arbitration Association and Construction Dispute Resolution Services, LLC in prior matters. Materials from each of these firms were admitted at the hearing below. Those materials suggest each firm has detailed selection procedures which require their panel arbitrators to disclose any potential biases. Even under our deferential standard to a trial court's fact findings, this record would not support a finding that BBWG designates biased arbitration firms. Other than speculation, in which we are precluded from engaging, we find no support for the contention that the procedure to appoint arbitrators is *per se* unconscionable. *Olshan*, 328 S.W.3d at 896 (speculation not proper basis to find unconscionability); *see Venture Cotton Cooperative v. Freeman*, 11-11-00093-CV, 2015 WL 1967251, at *6 (Tex.App.--Eastland Apr. 30, 2015, no pet. h.)(claim that trade group who was tasked with appointing arbitrators would be biased because of ties to one party were only speculative, and did not support unconscionability claim).

*Does the Limitation on Attorney's Fees or Limitations or*
*Implied Warranties Make the Agreement Substantively Unconscionable?*

Rockoff also argued below that the warranty's limitations on recovery of attorney's fees, court costs, and disclaimers of implied warranties render the arbitration agreement unconscionable. On appeal, she carries forward the argument with respect to attorney's fees, and correctly notes that the Deceptive Trade Practices Act allegations, if proven, would entitle her to recover attorney's fees. TEX.BUS.&COMM.CODE ANN. § 17.50(d)(West 2011). The statute prevents a waiver of that right unless certain predicates are present, which are not apparent on the record before us. *Id*. at § 17.42. Yet, the warranty, and the arbitration clause, specifically prevent any fee shifting for attorney's fees.

Rockoff's challenges in this regard are largely answered by the Texas Supreme Court's holdings in *Venture Cotton Cooperative v. Freeman*, 435 S.W.3d 222 (Tex. 2014). That case involved a number of cotton farmers who were challenging acreage agreements which committed them to sell their crop to a cotton buyer at a set price. *Id*. at 225. The underlying agreement required arbitration of disputes under the rules of an industry trade group. *Id*. at 226. Those rules would prevent the award of attorney's fees or additional damages under the DTPA, a claim which the farmers had pleaded in their lawsuit against the cotton buyer. *Id*.

The court of appeals had held the arbitration agreement unconscionable, reasoning that it prevented the farmers from pursuing the statutory remedies and attorney's fees as alleged in their pleadings. *Id.* at 229. The court of appeals premised its decision on *In re Poly-America, L.P.,* 262 S.W.3d 337 (Tex. 2008) which held that arbitration clauses only select the forum for resolving statutory claims, and are not meant to re-legislate the remedies found in those statutes. *See Poly-America, L.P.,* 262 S.W.3d at 352 ("[a]n arbitration agreement covering statutory claims is valid so long as the arbitration agreement does not waive the substantive rights and

remedies the statute affords and the arbitration procedures are fair, such that the employee may effectively vindicate his statutory rights.")[Internal quotations omitted].

But the Texas Supreme Court in *Venture Cotton Cooperative* disagreed in part and held the invalid waiver of DTPA remedies did not invalidate the arbitration clause as a whole. 435 S.W.3d at 230. As it did in *Poly-America, L.P.,* the court concluded the invalid waiver provision could be severed from the balance of the agreement, thus preserving the parties' choice of arbitration as the forum for resolving disputes. *Id.* Similarly, we hold that to the extent an arbitrator ever found that a viable DTPA claim was proven, the arbitrator would be bound, as we would be, to follow *Venture Cotton Cooperative,* strike the limitation on attorney's fees, and sever it from the arbitration agreement.

The parties' pleadings here did not expressly urge severance as an option.[5] Instead, with regard to the DTPA claim, they focused on whether Rockoff is a consumer under that statute which is a threshold requirement for bringing a DTPA claim. They both carry that argument forward on appeal. We decline, however, to jump into the merits of the lawsuit to resolve that issue. Our role is limited to the gateway function of deciding arbitrability.

The court of appeals in *Venture Cotton Cooperative* believed the severance option had been waived because it was not asserted at the trial court. 395 S.W.3d at 277. The Texas Supreme Court held that to be error by the court of appeals, because it at most delayed the inevitable. 435 S.W.3d at 230-31. The Texas Supreme Court reasoned that once the case was remanded, a party could have urged severance and the parties might be back in the appellate pipeline and no closer to having the merits of their case decided. *Id.* For the same reason, we

---

[5] One of the attorneys for AA Builders mentioned the option of severance of the attorney's fees provision once in passing at the hearing and only in the context of the arbitrator severing the provision. Severance is not urged in either the Motion to Compel arbitration or the response, and is next suggested to us in Appellants' brief as a reason any invalid clause would not support denial of arbitration.

apply *Venture Cotton Cooperative.* and hold that to the extent a DTPA claim is proven, the limitation on recovery of attorney's fee should be struck. The inclusion of that clause, therefore, would not be a valid basis to refuse to arbitrate this dispute.[6]

Rockoff also urged below that other claim-limiting provisions in the warranty, such as its disclaimer of implied warranties, render the arbitration agreement unconscionable. These issues, however, are questions addressed to the broader context of the entire warranty, rather than the separable agreement to arbitrate, and would therefore be matters entrusted to the arbitrator. *Lopez*, 467 S.W.9d at 500*; Venture Cotton Cooperative.,* 435 S.W.3d at 231, *citing PacifiCare Health Sys., Inc. v. Book,* 538 U.S. 401, 407 n.2, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003)("the preliminary question [of] whether the remedial limitations at issue . . . prohibit[ed] an award of RICO treble damages [was] not a question of arbitrability"); *In re FirstMerit Bank,* 52 S.W.3d at 756 (noting that the defenses of unconscionability, duress, fraudulent inducement, and revocation must specifically relate to the arbitration portion of a contract, not the contract as a whole).

To the extent the trial court refused to compel arbitration based on the remedy and claim limitation provisions found in the warranty, we hold that would have been error.

### *Do the Costs of Arbitration Render the Agreement Substantively Unconscionable?*

Rockoff raised the argument that the cost of arbitration prevents her from pursuing her claim. A court may find an arbitration agreement unconscionable if it imposes excessive costs which prevent a litigant from effectively vindicating his or her rights in the arbitral forum. *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *In re Olshan Foundation Repair Co., LLC*, 328 S.W.3d 883, 893 (Tex. 2010).

---

[6] We note that when the trial court here heard the motions to compel *Venture Cotton Cooperative* had not yet been decided by the Texas Supreme Court. The court remanded the case to the court of appeals to hear the remaining challenges, including the issue of substantive unconscionability based on the cost of arbitration. That issue has now also been resolved. *Venture Cotton Cooperative v. Freeman*, 11-11-00093-CV, 2015 WL 1967251, at *3 (Tex.App.--Eastland Apr. 30, 2015, no pet. h.).

Rockoff bears the burden of making that showing. *Green Tree*, 531 U.S. at 92, 121 S.Ct. 513; *Olshan,* 328 S.W.3d at 893. She is obligated to present "*some evidence* that [she] will likely incur arbitration costs in such an amount as to deter enforcement of statutory rights in the arbitral forum." [Emphasis in original]. *Poly-America*, 262 S.W.3d at 356. That evidence might consist of "invoices, expert testimony, reliable cost estimates, or other comparable evidence." *Olshan,* 328 S.W.3d at 895; *Venture Cotton Cooperative. v. Freeman*, 11-11-00093-CV, 2015 WL 1967251, at *3 (Tex.App.--Eastland Apr. 30, 2015, no pet. h.). The evidence must allow the trial court to analyze: (1) the claimant's ability to pay the arbitration fees and costs, (2) the expected cost differential between arbitration and litigation and whether that differential is so substantial that it deters the claimant from bringing its claims, and (3) the actual cost of arbitration compared to the total amount of damages that the claimant is seeking. *Olshan,* 328 S.W.3d at 895. "[A] comparison of the total costs of the two forums is the most important factor in determining whether the arbitral forum is an adequate and accessible substitute to litigation." *Id.* at 894-95.

BBWG and AA Builders now claim that Rockoff has failed to meet her burden to make such a showing. But we agree with Rockoff that she could hardly present to the trial court a calculation of the cost of arbitration versus litigation when no one knew the identity of the arbitrator. And the identity of the arbitrator could not be known until BBWG and AA Builders satisfied their obligation to present a list of potential arbitration firms. It is not enough to merely suggest the names of arbitration firms used in the past, and then ask the trial court to speculate what their costs might be if in fact they were put on the final list. We hold the cost analysis under the substantive unconscionability claim would have been premature when the trial court denied the motions to compel, and it cannot be done on the record before us. Accordingly, to the

extent that Rockoff wishes to re-urge this ground, she is free to do so once the identity of the arbitrator is decided.

## BREACH OF CONTRACT

Rockoff also urged below that BBWG's failure to informally talk with AA Builders to gain its compliance with the warranty, and its failure to appoint a conciliator, breached the contract, or was at least a condition precedent to arbitration. She additionally contends this now excuses her performance under the arbitration provisions.

In support of this view, Rockoff principally relies on *In re Igloo Products Corp.,* 238 S.W.3d 574, 581 (Tex.App.--Houston [14th Dist.] 2007, orig. proceeding) which held that the failure to mediate a dispute as required by the parties contract meant that any obligation to arbitrate was never triggered. The contract in that case expressly stated that arbitration "shall not be invoked unless the party seeking arbitration has first mediated the dispute with the other party or parties." *Id.* at 578; *see also In re Pisces Foods, L.L.C.*, 228 S.W.3d 349, 351 (Tex.App.-- Austin 2007, orig. proceeding)(similar holding based on clause that specified pre-arbitration procedures that "must be followed in sequence"). The warranty before us is not as explicit, stating only that if the conciliation process required for the Workmanship, Materials and Systems Warranty, or the mediation required for the Express Limited Major Structural Defect Warranty fails, then Rockoff "must submit the Dispute to binding arbitration pursuant to the terms and conditions of the Arbitration Section of this warranty." Nor are the sequence of events here as clear as in *Igloo Prod.* and *Pisces Food*, and therein lies one problem with Rockoff's argument.

Conditions precedent to arbitration are generally viewed as procedural arbitrability issue, and are accordingly matters for the arbitrator to determine. *Howsam v. Dean Witter Reynolds*, *Inc.,* 537 U.S. 79, 84-85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *John Wiley & Sons, Inc. v.*

*Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *In re Global Const. Company, L.L.C*, 166 S.W.3d 795, 798 (Tex.App.--Houston [14th Dist.] 2005, orig. proceeding). Accordingly, questions of exhaustion of internal dispute resolution procedures would be a matter for the arbitrator. *Omoruyi v. Grocers Supply Co., Inc.*, 14-09-00151-CV, 2010 WL 1992585, at *8 (Tex.App.--Houston [14th Dist.] May 20, 2010, no pet.). *Omoruyi* is instructive, because the court distinguished its own earlier opinion in *Igloo Prods.*, describing it as an exception applying only when the issues were "factually undisputed." *Id. See also General Warehousemen & Helpers Union Local 767 v. Albertson's Distribution, Inc.*, 331 F.3d 485, 488 (5th Cir. 2003)(referring to this as a "rare exception" applying only if "no rational mind could question that the parties intended for a procedural provision to preclude arbitration and that the breach of the procedural requirement was clear.")(internal quotations omitted). By contrast the parties in *Omoruyi* disputed whether certain predicate steps were taken or not, and the court left that disputed issue to the arbitrator. *Id*. at *8.

In much the same the way, at best Rockoff's contention that BBGW breached its pre-arbitration obligations is disputed, and at worse, there is no evidence any breach. We find no evidence in the record, for instance, that BBWG failed to contact AA Builders to attempt to get them to comply with its warranty obligation. The only evidence in the record regarding conciliation is a letter from BBGW to Rockoff's attorney asking that a claim form be completed so it could designate an appropriate conciliator. Ten days later, Rockoff served a demand for the monetary limit of the warranty and simultaneously filed a lawsuit. BBWG claimed in an interrogatory answer that Rockoff filed suit before it could appoint a conciliator. We find no record support that BBGW breached its obligation to appoint a conciliator.

There is a second problem with Rockoff's breach of contract claim. She asserted claims under both of the warranty clauses we previously described. Her complaints below addressed alleged failure of BBGW to contact AA Builders, and failure to appoint a conciliator. Those requirements apply only the Workmanship, Materials and Systems Warranty. She never complained below of any failure to hold a mediation, which is the only preliminary procedure required for the Express Limited Major Structural Defect Warranty. We find nothing in the record where she presented any evidence regarding mediation at all. So even if she were correct that the BBWG failed to follow the conciliation process, that would not excuse arbitration under the Express Limited Major Structural Defect Warranty claims.

But the record here does confront us with one glaring deficiency with BBWG and AA Builders' request for arbitration--neither Appellant ever provided Rockoff with a list of potential arbitration firms to hear this dispute. Neither BBWG or AA Builders point to a place in the record below where Rockoff was given a list of approved arbitration companies from which she was to choose an arbitrator at the time arbitration was requested. At most, an interrogatory answer set out the identity of two firms that BBGW had approved in the past. The same interrogatory answer states that "Arbitrators and arbitration companies are selected by agreement on a case by case basis."

In their opening brief to this court, BBWG and AA Builders contend that they could not provide a list of suitable arbitrators until Rockoff asked for arbitration. There is nothing in the arbitration clause, however, that imposes such an obligation distinctly on Rockoff. Moreover, we note the agreement provides that the filing of a lawsuit is itself deemed to be request to arbitrate. BBWG and AA Builders never provided Rockoff with the list of arbitrators from which to choose.

Ordinarily this might end the inquiry, but Rockoff never distinctly raised this issue below as a reason to deny the motion, nor does she on appeal.[7] And even if she had, we would be in the same posture as *Venture Cotton Cooperative* where a remand solely on this basis without addressing the other issues would not put the parties any closer to a final resolution of their dispute. This arbitration agreement is governed by the FAA which has a specific gap filling provision when there is a failure to appoint an arbitrator pursuant to the parties' agreement:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, *or if a method be provided and any party thereto shall fail to avail himself of such method*, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator. [Emphasis added].

9 U.S.C.A. § 5 (2009); *see Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*, 814 F.2d 1324, 1329 (9th Cir. 1987)("the intent of Congress was to spur the arbitral process forward, rather than to let it stagnate into endless bickering over the selection process").

Were the matter left entirely to us, we would remand with instructions for the trial court to appoint an arbitrator given that BBWG and AA Builders "fail[ed] to avail" themselves of the method set out in the agreement. The gap filling provision of Section 5, however, requires an "application of either party" which we view as limiting our ability to order this on our own initiative. On remand, however, we are confident that the trial court will expedite the process of selecting an arbitrator (or one party may make an application under Section 5) so that the trial

---

[7] Her argument below, obscured in one of the forty-two numbered paragraphs of "factors for the trial court to consider," was that there never a "pre-existing" list of approved arbitrators. But that was never a requirement under the warranty. Instead, the warranty states that "BBWG will provide [the list] to You when arbitration is requested."

court may resolve one last issue that was raised below: whether the agreement is substantively unconscionable because of the costs of arbitration.

## CONCLUSION

Appellants met their initial burden to show the existence of an arbitration agreement that covered the claims asserted in the lawsuit. Two of the three reasons that Rockoff urges on appeal to deny arbitration--substantive unconscionability because of the manner of arbitrator selection, and breach of contract--lack merit on this record and cannot sustain the trial court's order. Of the other reasons she asserted below--procedural unconscionability and that the claims are not covered by the agreement--likewise lack merit. Her assertion here and below that the arbitration costs might make the agreement procedurally unconscionable cannot be decided on this record because the identity of the arbitrator is yet to be determined. Accordingly, we remand the case with instructions to obtain an appointment of an arbitrator. So long as the costs of arbitration do not render the agreement substantively unconscionable under the applicable legal standards, we order the trial court to grant the pending motions to stay the litigation and compel arbitration.

June 16, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.