**Dissenting Opinion Filed October 22, 2021**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

No. 05-20-00380-CV
No. 05-20-00387-CV
No. 05-20-00388-CV
No. 05-20-00389-CV
No. 05-20-00390-CV

_____

**PRESTONWOOD TRADITION, LP; TRADITION MANAGEMENT, LLC; PRESTONWOOD TSL, LP; PRESTONWOOD TSL GP, LLC; TRADITION SENIOR LIVING, L.P.; TRADITION SL, LLC; AND JONATHAN S. PERLMAN,**
**Appellants / Relators**
**V.**
**MARY JO JENNINGS, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF LEAH ALICE CORKEN; LISA CULLEN, INDIVIDUALLY; MATT CORKEN, INDIVIDUALLY; DIANNE TANNERY, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF JUANITA PURDY; THOMAS DUCKER, INDIVIDUALLY; SHERRIL KERR, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF GLENNA DAY; GREGORY B. DAY, INDIVIDUALLY; MARSHA SPRING REPP AND STEPHEN SPRING, INDIVIDUALLY AND AS THE CO-EXECUTORS AND REPRESENTATIVES OF THE BENEFICIARIES OF THE ESTATE OF SOLOMON H. SPRING; MICHAEL SOLOMON, MATTHEW ABRAMOWITZ, AND PAUL ABRAMOWITZ, INDIVIDUALLY AND AS THE CO-EXECUTORS AND REPRESENTATIVES OF THE BENEFICIARIES OF THE ESTATE OF JOYCE ABRAMOWITZ; AND MARC ABRAMOWITZ, INDIVIDUALLY,**
**Appellees / Real Parties in Interest**

## DISSENTING OPINION

Before Justices Partida-Kipness, Pedersen, III, and Goldstein
Dissenting Opinion by Justice Partida-Kipness

I disagree with the majority's determination that the trial court abused its discretion by deciding gateway issues of arbitrability. The majority's holding conflicts with this Court's binding precedent. I, therefore, adamantly dissent.

### DETERMINATION OF ARBITRABILITY

In their first issue, appellants (the Prestonwood Entities) assert that the trial court impermissibly determined questions of arbitrability by staying the AAA proceedings and denying their pleas in abatement rather than submitting those questions to the AAA. The majority agrees, but I do not.

Arbitration is "simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 525–26 (Tex. 2019) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Arbitration is governed by two fundamental principles: arbitration agreements are contracts that must be enforced according to their terms, and a party cannot be compelled to arbitrate any dispute absent an agreement to do so. *Id.*

Although arbitration is favored under both state and federal law, "arbitrators wield only the authority they are [contractually] given." *Lamps Plus, Inc. v. Varela*,

–2–

139 S. Ct. 1407, 1416 (2019). To ensure parties are not forced to arbitrate matters outside their agreement, a substantive question of arbitrability—i.e., whether the parties have actually agreed to submit a particular dispute to arbitration—"is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83–84 (2002) (quoting *AT & T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

The phrase "question of arbitrability" refers to the "narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter." *Howsam*, 537 U.S. at 83. Referring gateway matters to the court "avoids the risk of forcing parties to arbitrate a matter they may well not have agreed to arbitrate." *Id.* These "gateway matters" include whether the parties agreed to arbitrate and whether a claim or dispute is encompassed in the agreement to arbitrate. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 520–21 (Tex. 2015) (questions of substantive arbitrability, which concern the existence, enforceability and scope of an agreement to arbitrate, are usually decided by the trial court.); *McGehee v. Bowman*, 339 S.W.3d 820, 824 (Tex. App.—Dallas 2011, no pet.); *Saxa Inc. v. DFD Architecture, Inc.*, 312 S.W.3d 224, 229 (Tex. App.—Dallas 2010, pet. denied) (whether the parties agreed to arbitrate is generally an issue decided by the courts rather than an arbitrator).

The parties may, however, agree to submit arbitrability issues to arbitration. *Saxa*, 312 S.W.3d at 229 (citing *Howsam*, 537 U.S. at 83). But courts do not assume

the parties "agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Roe v. Ladymon*, 318 S.W.3d 502, 513 (Tex. App.—Dallas 2010, no pet.) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *accord McGehee*, 339 S.W.3d at 825–26 (if the parties clearly and unmistakably provide that the arbitrator is to decide the questions of substantive arbitrability, then the trial court must permit the arbitrator to decide those issues). A "court must examine the arbitration agreement to decide if, when construed under the relevant state law, the agreement evidences a clear and unmistakable intention that the arbitrators will have the authority to determine the scope of arbitration." *Saxa*, 312 S.W.3d at 229 (citing *ODL Servs. Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399, 413 (Tex. App.—Houston [1st Dist.] 2008, no pet.)). For example, the parties' agreement to a broad arbitration clause that expressly incorporates rules empowering the arbitrator to decide substantive arbitrability may provide clear and unmistakable evidence of the parties' intent to delegate the issues of substantive arbitrability to the arbitrator. *See Saxa*, 312 S.W.3d at 230; *see also Swearingen v. Swearingen*, No. 05-15-01199-CV, 2016 WL 3902747, at *3–4 (Tex. App.—Dallas July 14, 2016, no pet.) (mem. op.); *Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 802–03 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Here, paragraph 8.B of the Operative Leases includes the following sentence: "The Panel shall follow the current Commercial Arbitration Rules of the AAA."

Rule 7(a) of the Commercial Arbitration Rules of the AAA permits an arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Agreement." The Prestonwood Entities argue, and the majority holds, that by invoking the AAA and its Commercial Arbitration Rules in the arbitration agreements, the parties clearly and unmistakably agreed to submit arbitrability issues to the arbitrator. The majority's conclusion conflicts with this Court's opinion in *Roe*, in which we considered and rejected the same argument. *Roe*, 318 S.W.3d at 517.

In *Roe*, Metro LLP and Roe were the parties to a construction contract with an arbitration provision. 318 S.W.3d at 507. Ladymon signed the contract as Metro's partner but did not sign in his individual capacity. *Id.* The arbitration agreement incorporated the AAA's Construction Industry Arbitration Rules, which included Rule R–8, a provision similar to Rule 7 of the Commercial Arbitration Rules. *Id.* at 507, 517. Roe was dissatisfied with Metro's construction services and demanded arbitration against both Metro and Ladymon. *Id.* at 508. Ladymon objected to arbitration, asserting the arbitration provision did not apply to him because he did not sign an agreement to arbitrate in his individual capacity. *Id.* Roe argued that Rule R–8 required that the question of whether Ladymon was subject to the arbitration provision be submitted to the arbitrator. *Id.* at 517.

This Court disagreed, noting that "the entities who agreed to arbitrate under the AAA rules are Metro LLP and Roe, not Ladymon" and, as such, "the terms of

the contracting parties' agreement to arbitrate is not evidence that a non-contracting party—here Ladymon—agreed to arbitrate or to do so under AAA rules, much less clear and unmistakable evidence of such an agreement." *Roe*, 318 S.W.3d at 517 (citing *First Options*, 514 U.S. at 946–47). We concluded that we could not "say that Ladymon clearly and unmistakably agreed to submit gateway issues to an arbitrator simply because Roe and Metro LLP agreed to arbitrate in accordance with rules selected by the AAA." *Id.*

The majority's reliance on *HomeAdvisor, Inc. v. Waddell* is misplaced because the parties seeking to avoid arbitration there were first parties to the arbitration agreement, not third-party complainants asserting derivative claims like the Estate Representatives here. No. 05-19-00669-CV, 2020 WL 2988565, *2 (Tex. App.—Dallas June 4, 2020, no pet.) (mem. op.). Rather, those parties engaged Home Advisors' services through an on-line, click-through agreement and, in the process, agreed to terms and conditions that included an arbitration provision. *Id.* That provision stated that arbitration would be administered by the AAA and governed by the AAA's Commercial Arbitration Rules. *Id.* Because they were the actual parties to the agreement, this Court concluded the reference to the AAA's Commercial Arbitration Rules provided "clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability to the arbitrator." *Id.* at *5. Here, however, the Estate Representatives did not sign the leases. The reference to the AAA's Commercial Arbitration Rules, therefore, provides no evidence that the

Estate Representatives intended to delegate arbitrability issues to the arbitrator. *See Roe*, 318 S.W.3d at 517.

Under this record, I would apply *Roe* and affirm the trial court's order. Just as in *Roe*, the parties seeking to avoid arbitration here—the Estate Representatives— are non-contracting parties because they did not sign the leases. *See Roe*, 318 S.W.3d at 517. As such, the language in the leases stating that the arbitration panel "shall follow the current Commercial Arbitration Rules of the AAA" is not evidence that the Estate Representatives agreed to arbitrate or to do so under AAA rules, much less clear and unmistakable evidence that the Estate Representatives, as non- contracting parties, authorized an arbitrator to decide those gateway matters. *See, e.g.*, *Elgohary v. Herrera*, 405 S.W.3d 785, 791–92 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (applying *Roe* and concluding that agreement to arbitrate under AAA rules was not clear and unmistakable evidence that a non-contracting party agreed to arbitrate under AAA rules).

Whether the arbitration agreement binds the Estate Representatives as non- signatories is for the courts to decide, unless there is "clear and unmistakable evidence" that the Estate Representatives agreed the arbitrator would make that decision. *See Roe*, 318 S.W.3d at 514 (first citing *First Options*, 514 U.S. at 944 and then citing *Howsam*, 537 U.S. at 84). On this record, I would conclude the Prestonwood Entities have not shown that the Estate Representatives "clearly agreed to have the arbitrator [ ] decide (i.e., to arbitrate) the question of arbitrability." *See*

*First Options*, 514 U.S. at 946. Because the non-contracting parties (here the Estate Representatives) "did not clearly agree to submit the question of arbitrability to arbitration, the [trial court] was correct in finding that the arbitrability of the dispute was subject to independent review by the courts." *See id.* at 947. Accordingly, I would hold that the trial court correctly concluded the arbitrability of the dispute was subject to its de novo determination. *See Roe*, 318 S.W.3d at 518; *see also Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018) ("Given the absence of clear and unmistakable evidence that Jody James agreed to arbitrate arbitrability in disputes with non-signatories, compelled arbitration cannot precede a judicial determination that an agreement to arbitrate exists. The trial court was therefore charged with determining whether a valid agreement to arbitrate exists between Jody James and the Agency before any issue may be referred to arbitration.").

## REMAINING APPELLATE ISSUES

Having concluded the trial court did not abuse its discretion by determining gateway issues of arbitrability, I would then have analyzed and addressed the Prestonwood Entities' remaining appellate issues in which they assert the trial court abused its discretion by (1) determining the TAA applied to the arbitration agreements (Issue Two); (2) disregarding the "uncontroverted evidence" establishing that the Estate Representatives' claims are arbitrable under the FAA (Issue Three); (3) striking the affidavit of Richard Campos offered in support of their

pleas in abatement (Issue 4); and (4) denying arbitration under the common law (original proceedings).

First, I would overrule the Prestonwood Entities' fourth issue regarding the Campos affidavit due to waiver because they did not seek a continuance of the hearing or file a response to the objections before the court ruled and they failed to address renewed objections argued at the hearing. *See Cunningham v. Anglin*, No. 05-12-00039-CV, 2014 WL 3778907, at *3 (Tex. App.—Dallas July 31, 2014, pet. denied) (mem. op.) (although a trial court should not sustain late-filed objections without giving the other party an opportunity to amend, "the other party should ask the trial court for a continuance for time to respond to the objections" and failing to do so waives error on appeal"); *Webster v. Allstate Ins. Co.*, 833 S.W.2d 747, 750 (Tex. App.—Houston [1st Dist.] 1991, no writ.) (same). By failing to respond or offer any argument in defense of the objections, the Prestonwood Entities did not preserve error for review. *Webster*, 833 S.W.2d at 750.

Without the Campos testimony, the remaining record will not support the Prestonwood Entities' contention that the FAA applies here because there is no evidence that the leases show a transaction involving interstate commerce. *See* 9 U.S.C. § 2. Without such evidence, the Prestonwood Entities' assertion that the FAA controls the arbitration agreement fails as a matter of law. *See Dobson*, 513 U.S. at 281 (the transaction evidenced by the contract must in fact involve interstate commerce); *Eastland v. Camp Mystic, Inc.*, No. 04-08-00675-CV, 2009 WL 260523,

at *3 (Tex. App.—San Antonio Feb. 4, 2009, pet. denied) (mem. op.) (lease between two Texas entities for real property on which one party operated a summer camp did not evidence a transaction involving interstate commerce). Further, I would conclude the record shows that interstate commerce is not implicated here. All parties involved in the suit are Texas residents, the leases were signed in Texas, the leases were to be performed in Texas only, the leased premises are located in Texas, the leases are governed by Texas law, and the underlying dispute does not relate in any way to interstate commerce. The agreements, therefore, cannot be governed by the FAA. Accordingly, I would conclude the trial court did not abuse its discretion by denying the Prestonwood Entities' motion to compel arbitration under the FAA, and I would overrule the Prestonwood Entities' third issue.

Next, I would overrule the Prestonwood Entities' second issue and conclude the TAA governs the arbitration agreements but renders those agreements unenforceable as to the personal injury claims asserted here. The Estate Representatives provided multiple bases in support of their argument that the arbitration agreements were invalid and unenforceable, including that the agreements were illusory, unconscionable, and did not comply with signature requirements set out in the Act related to personal injury claims. Because the trial court did not enter findings of fact or conclusions of law to explain its ruling, we must uphold the trial court's decision on any appropriate legal theory urged below. *See Bonded Builders Home Warranty Ass'n of Tex. v. Rockoff*, 509 S.W.3d 523,

531–32 (Tex. App.—El Paso 2016, no pet.); *see also Lakeway Homes, Inc. v. White*, No. 05-15-01455-CV, 2016 WL 3453559, at *3 (Tex. App.—Dallas June 23, 2016, no pet.) (mem. op.).

A written agreement to arbitrate is valid and enforceable under the TAA if the agreement is to arbitrate a controversy that: (1) exists at the time of the agreement; or (2) arises between the parties after the date of the agreement. TEX. CIV. PRAC. & REM. CODE § 171.001. The TAA controls the dispute where, as here, the contract does not relate to interstate commerce and was executed between Texas residents in Texas, to be performed in Texas. Therefore, I would hold that the TAA controls this dispute, and the trial court did not abuse its discretion to the extent it made that determination. *See, e.g.*, *Chambers v. O'Quinn*, 305 S.W.3d 141, 150 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (TAA controlled dispute despite references to both FAA and TAA in the contract where contract did not relate to interstate commerce); *see also In re Godt*, 28 S.W.3d 732, 738–39 (Tex. App.—Corpus Christi–Edinburg 2000, orig. proceeding) (same).

When a party's claim is for personal injury, however, an arbitration agreement is unenforceable as to the personal injury claim unless: "(1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate; and (2) the agreement is signed by each party and each party's attorney." TEX. CIV. PRAC. & REM. CODE § 171.002(a)(3), (c). It is undisputed that the leases at issue here are not signed by the Estate Representatives in their individual capacities, or by the decedents' attorneys,

–11–

the Estate Representatives' attorneys, or the Prestonwood Entities' attorneys. As a result, the arbitration agreements are unenforceable. Accordingly, I would conclude the trial court could reasonably determine the arbitration agreements were unenforceable as to the personal injury claims asserted here. *See, e.g.*, *In re Godt*, 28 S.W.3d at 738–39 (concluding TAA controlled dispute and holding that the arbitration agreement is unenforceable under the TAA because it did not meet the requirements of section 171.002(c)).

Finally, I would deny the petitions for writ of mandamus. Discussion of whether the order is permissible under the common law would be obviated by a determination that the trial court did not err in staying the AAA proceedings and denying the pleas in abatement under the TAA. *See Miller v. Brewer*, 118 S.W.3d 896, 899 (Tex. App.—Amarillo 2003, no pet.) (per curiam) (discussion of whether order was permissible under the FAA or common law unnecessary because court concluded order was permissible under the TAA).

## CONCLUSION

Under this record, I would conclude the trial court did not abuse its discretion by granting the motions to stay arbitration and denying the pleas in abatement.

Because the majority reaches the opposite conclusion and in doing so disregards this Court's binding precedent, I adamantly dissent.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

200380DF.P05